The first contention made by counsel for the commissioners . is that Section 794, which requires the commissioners to award the contract to the lowest and best bidder applies, and that, therefore, a discretion was vested in the commissioners to determine as to which bid was best, and that under this section, they • were entitled to award the contract to the next lowest bidder instead of to the lowest. On the other hand, it is claimed by the plaintiff that Section 799 governs in this ease, and that the commissioners must award the contract to the lowest bidder. These two sections, apparently conflicting, have been passed upon in the case of State v. Commissioners, 39 O. S., 188, in which the court held, “that the apparent conflict between Sections 794 and 799 does not, in fact, exist; that Section 794 provides for letting contracts in certain cases under certain conditions to separate bidders representing different trades, in respect to which the provisions of that section only apply, and that in all other eases the provisions of Section 799, requiring *584 the lowest bidder applies.” In other words, the court holds that the purpose of Section 794, which uses the words “lowest and best bidder,” was to provide a means for bidding upon separate parts of the work by contractors and tradesmen, without requiring them to undertake the entire job, and to prevent combinations and forestall competition, and to entitle them to separate contracts, their aggregate bids must not exceed that of any bidder who includes the whole. As these conditions do not exist in this case, but as the contract was as a whole, I am of opinion that Section 799 applies, and that in this case it was the duty of the commissioners, in the absence of any intervening facts, to award the contract to the lowest bidder. State, ex rel, v. Betts, 4 C. C., 86.
The question now arises as to whether or not the commissioners must, in all cases, award the contract to the lowest bidder. A distinction must be noted between the right of the commissioners to voluntarily agree to and permit the lowest bidder to withdraw, and the right to award to the next highest bidder, if the lowest bidder does, as a matter of fact, withdraw, or refuse or neglect to comply with the terms of the bid and give bond and enter into a contract. To what extent or under what circumstances the commissioners might be empowered to release a lowest bidder, it is not necessary, in this case, to determine.
Assuming, as seems probable, that having once filed a bid, a bidder can not withdraw except under penalty of paying damages equal to the difference between his bid and the bid actually accepted and awarded, and assuming further that, any act or resolution of the commissioners releasing a lowest bidder is ultra vires, and therefore null and void, and as to which corrective action may be maintained in court, nevertheless the case presented here is not to be decided upon the law applicable to either of those legal situations. In this ease the lowest bidder has, in open meeting of the commissioners, confessed its inability to do the work, and has failed and neglected to enter into a contract or to give the required bond, or to agree to do either. The acquiescence of the commissioners in these acts of withdrawal, or failure to carry out their bid, is, no doubt, null and void; and such acquiescence of the commissioners will afford *585 the said bidders no ground of relief in a subsequent action for damages against said bidder. But whether this be the law or not, the question squarely presented for decision here is this: In the absence of any circumstance of collusion, and in the event that the lowest bidder fails to act, can the county commissioners award the contract to the next lowest bidder, or are they required to readvertise for bids? The argument is very strongly advanced that under no circumstances should the county commissioners be permitted to award a contract in such ease to the next lowest bidder, but that they ought to readvertise for bids, for the reacon that to open this door of procedure will be to permit, in a great many cases, collusion, whereby parties will purposely bid high and low, and then have the lower bids withdrawn for the purpose of cutting out an actual competitor, or for the purpose of securing higher prices; that this danger is so great that it should be the policy of the law to absolutely forbid such action altogether, rather than to permit it in the cases in which no actual harm might be done. That the commissioners, in advertising for bids and making contracts, must exercise some discretion is most apparent. They must see that the contract itself properly carries out and covers all the subject matters contained in the bid. They must judge as to the sufficiency of th'e bond and of the sureties offered, etc. Boren v. Commissioners, 21 O. S., 311.
Thus, in the last named case, at page 321, the court says that •the requirement of the commissioners that the sureties on a bond must be residents of the state, is not an abuse of their discretionary power, but, on the contrary, is reasonable and not an improper exercise of their discretion. And in that case the court sustained the action of the commissioners in refusing to accept the lowest bid on that ground.
On the other hand, the courts have reviewed the discretion exercised by the county commissioners, and where the same has been abused, have reversed the action. But in taking this action of reversal, the court itself has held that the commissioners of a county have a wide discretion in determining the amount and sufficiency of the bond to be given by the lowest bidder. State v. Hippard, 1 C. C., 194.
*586 Against this claim that the door of opportunity for collusion should be shut altogether, thereby preventing any such collusion must be urged not only the presumption that the commissioners will exercise their discretion properly, but the further fact that that discretion is always subject to review and consideration by the courts, and further must be considered the fact that a great many contracts, such, for instance, as the one at bar, require immediate and urgent fulfillment, and the expense of readvertising in such ease and the delay incident thereto would be at the loss of the county, while it would be highly improbable that there would be any difference in the amount of the bids.
In the ease of Boren v. Commissioners, above cited, the lowest bidder for the construction of the Darke county court house having failed and neglected to give a proper bond, the Supreme Court held that the next highest bidder, the relator in that case, was entitled to the contract. In that case, ‘however, the question as to whether or not the commissioners ought to readvertise, was not directly raised.
In the case of State, ex rel, v. Commissioners of Licking County, 26 O. S., 531, the lowest bidder having failed to qualify, the court holds that the next lowest bidder who does qualify is entitled to an award of the contract.
The two cases cited by counsel for the plaintiff herein fail to fit directly the case at bar: In the case of Holden v. City of Alton, 179 Ill., 319, the hid of the lowest bidder was rejected solely because he did not employ members of a certain labor organization, and could not show the union label, which act was set aside; and the case of Twiss v. The City of Port Huron, 63 Michigan, 528, involves collusion between the bidders, whereby they prevented the municipality from awarding to the next highest bidder. It is true that in the syllabus of this last named case, the rule is laid down that where one of four bidders, whose bid was lowest, withdrew, the municipality had no power to award the contract to the next highest bidder. But the case itself shows that the court had in consideration the fact of collusion, as illustrated on page 531, where the court says:
“The testimony shows pretty plainly that G and H were in collusion, and knew of each other’s bid, and were each other’s *587 bondsman, and were to work together in the matter, and that H was privy to the withdrawal of G’s bid.”
I have reached the conclusion, therefore, that where there is an entire absence of facts or circumstances whatever, whereby any injustice to the county might occur, or whereby any indications of collusion appear, that the county commissioners may, in their discretion, award a contract to the next highest bidder, where the lowest bidder fails and neglects to accept the contract.
The second contention is also raised that the contract should be enjoined, because, in addition to embracing all the terms of this bid, a further contract is inserted therein to the effect that said bidder agrees to take down and remove the old bridge structure now there, in consideration of the material contained therein. From the evidence adduced, I find the value of this material to be less than $1,000. It is clear, therefore, that this contract comes within the purview of the statute which permits the commissioners to make the same without advertising. The commissioners, having the power therefore, to let this contract without advertising, it matters not that they embraced the same along with the contract to build the new bridge. In other words, the commissioners had a perfect right to make two contracts with this firm, each being separate and distinct from the other, and having no connection the one with the other, or they might have authority to make the two — award them in one instrument. The form of the instrument is not material, and can not possibly lead to any harm or prejudice. On this second ground, therefore,' there appears no reason to me, to enjoin the contract.
A third point made by counsel is based upon a resolution of the commissioners with reference to the small contract to remove the bridge. The successful bidder for the construction of this bridge made the following proposition or letter to the commissioners :
'“To the Honorable Board of County Commissioners of Franklin County, Ohio.
“Gentlemen: In consideration of your board awarding to us the contract for the substructure and piers of the Fishinger Mill Bridge at our bid of $19,537.50, we hereby agree to remove the present super-structure of said Fishinger Mill bridge from *588 its present location and out of the way of the proposed new substructure and super-structure, without any charge against or cost to the county therefor, saving the county and the commissioners thereof, free and harmless from any damages or liability caused by said removal. All material of whatever character contained therein to be the absolute property of said Cook & Grant after said removal. (Signed) Cook & Grant.”.
L. G. Addison, for plaintiff.
A. T. Seymour, for defendant.
On the same day, the commissioners accepted this proposition. The argument is now made that the consideration to this successful bidder is not only the amount of money which he has agreed to receive for constructing the bridge, but that the consideration further is the second agreement as shown by this letter. The answer to this must be plain. Whether or not the isaid Cook & Grant had written such a letter as this, they would be bound, upon the acceptance of the commissioners, to fulfill their bid or suffer the penalty therefor. The recital in the first sentence of this letter “in consideration of your board awarding to us the contract,” etc., is a nullity. It confers no rights to either party, nor could it be pleaded to the detriment or advantage of either party. The consideration for the construction of the bridge is wholly outside of this letter, and the consideration of the taking down of the old structure, which is a separate matter, has nothing whatever to do with and could not be based upon a contract previously awarded, and which was based upon a bid and acceptance thereof. In other words the mere recital in this letter of the fact that they had been awarded a contract ¡would not of itself make this a part of the consideration. The contract let upon this public structure must be let solely upon the bid submitted, and any recitals before or after as to other considerations can not affect the real facts in the case.
The action of the plaintiff in this case will be dismissed, and the relief asked for will be denied. Exceptions. Appeal bond, $100.